IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JENNIFER B., et al, | ) |
| | ) |
| Plaintiffs, | ) |
| | )   2:20-cv-00542 |
| v. | ) |
| | ) |
| TRAFFORD BOROUGH, et al, | ) |
| | ) |
| Defendants. | ) |

**OPINION**

**Mark R. Hornak, Chief United States District Judge**

This is a civil rights action brought to recover monetary relief for alleged constitutional violations by a local municipality (Trafford Borough) and several of its officials, namely a police officer (Holmes), the Chief of Police (Disso), and Trafford's municipal Code Enforcement Officer (Hlad) (collectively "the Defendants").

The Plaintiffs allege that the Defendants caused the unjustified removal of two minor children from the home of the Plaintiff mother (Jennifer B.) under false pretenses—namely that the police were instructed to remove the children by Children and Youth Services. They also allege that the Defendants sought to force Jennifer B.'s father to evict her from the residence she leased from him, and to cause him to be fined if he did not do so, in retaliation for the Plaintiff/mother's threat of legal action against the police officers for the removal of her children.

Plaintiff Timothy Sanchez—who Plaintiffs allege is in a romantic relationship with Plaintiff Jennifer B.—also claims he is a victim of unconstitutional retaliation for his association with Plaintiff Jennifer B, alleging that, without evidence or probable cause, the Defendant police officers cited him for operating a motor vehicle without a license because of that romantic relationship.

1

The Defendants seek to dismiss some of those claims. (ECF Nos. 9, 10.) The Plaintiffs have responded. (ECF No. 13.) For the reasons which follow, that Partial Motion to Dismiss at ECF No. 9 will be denied without prejudice, except as to the stand-alone claim for "fabrication of evidence," which the Plaintiffs concede will be deemed withdrawn. (*Id.* at 8.)

The Defendants first ask the Court to dismiss the whole case because the Plaintiff Jennifer B. has filed this action using only her first name and the first initial of her last name. They argue that the federal courts are open to the public to do the public's business. They are correct as far as that goes. But they miss the bigger picture. The core of the Plaintiffs' Complaint involves two minor children, H.J. and S.P., who are also named Plaintiffs. The Court and the parties can take notice of the fact that Trafford is a smaller community. If Jennifer B.'s full name is on the docket, it will identify the children like night follows day. Rather than dismiss the case, the solution is for the Court to order that Jennifer B. file a notice on the docket under seal setting forth her full legal name, and to then provide a copy to the Defendants, coupled with a motion for leave to proceed via use of the "Jennifer B." moniker, with a proposed Order. If there is thereafter a motion or request to unseal that filing in the face of what appear to be the legitimate interests in protecting the identity of the minor children, then the Court will take it up at that time. Fed. R. Civ. P. 5.2(a); *See also Doe v. Rider Univ.*, No. CV 16-4882 (BRM), 2018 WL 3756950, at *5 n.5 (D.N.J. Aug. 7, 2018) ("The public has an interest in granting anonymity when the consequences of revealing a litigant's identity include revelation of vulnerable parties' identities, such as children and victims of crimes.").

The Defendants next ask that this Court dismiss the claims at Counts IV and V as against Hlad, Disso and Trafford. Jennifer B. pleads that Hlad and Disso retaliated against her in terms of allegedly telling her father that he would be fined if he did not throw Jennifer B. out of her

residence (which the father owned) after Jennifer B. said that she planned on suing the involved police officers for removing her children from her home. The Complaint pleads that as a consequence of that conduct by those Defendants, the father/landlord has taken legal action against Jennifer B. in order to evict her from the property.

These Defendants acknowledge that such a claim of First Amendment retaliation is recognized in the law, and requires that the Plaintiff have engaged in constitutionally protected conduct, that the alleged retaliation that was threatened would deter a person of ordinary firmness for exercising their constitutional rights, and that there was some causal link between those two things. (ECF No. 10, at 7 (citing to *Conard v. Pa. State Police*, 902 F.3d 178, 183–4 (3d Cir. 2018).); *see Palardy v. Twp. Of Millburn*, 906 F.3d 76, 80–81 (3d Cir. 2018). These Defendants say that the alleged actions of the police officers should be classified as *de minimis* and should be treated as akin to criticisms or reprimands which would not support such a claim. (*Id.* at 8.)

The allegations that the police and Code Enforcement Officer, acting under the color of state law, threatened to impose a fine on Jennifer B.'s father/landlord if he did not evict her, which allegedly led to him beginning the legal proceedings to do just that, all because she threatened to sue the police officers could easily be found by a jury to deter not only a person of "ordinary firmness" from exercising a right protected by the First Amendment (to access the courts and bring a lawsuit), but in the Court's judgment could be found to deter a person of even special toughness. The Plaintiffs' allegation that, as a direct and proximate consequence of the Defendants' threats, the landlord (Jennifer B.'s father) has begun the process of taking legal action to evict Plaintiff Jennifer B. especially counsels in favor of this conclusion. (*See* ECF No. 1, ¶ 46.) That is a tangible and substantial consequence triggered by the alleged threats of the

police officers. The claims alleged against the individual Defendants at Count IV more than "show" a plausible claim for relief, *Fowler v. UPMC Shadyside*, 578 F. 3d 201, 210–11 (3d Cir. 2009), and will not be dismissed, at least not at this stage of the case.

Trafford Borough asks the Court to dismiss the claims against it (Counts IV and V) as being insufficiently pleaded. Trafford argues that the doctrine of *"respondeat superior"* does not apply to create vicarious municipal liability for the conduct of a governmental unit's employees or officers, unless there is a showing that the alleged unconstitutional conduct had its genesis in or was in furtherance of a custom or policy of the municipality. (ECF No. 10, at 9.) That has been the law for quite some time. *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978). Ordinarily, such a "policy" is one made by a "final policy-maker." *Hill v. Borough of Kutztown,* 455 F.3d 225, 245 (3d Cir. 2006). As to the Borough's Code Enforcement Officer, Hlad, the Court concludes that at this juncture: (1) the Plaintiffs have sufficiently alleged that Hlad holds a position that could well fit that bill; (2) they have alleged that he and by him the Borough did take action reliant on the duties of his office relative to the Plaintiff Jennifer B.; and (3) further factual development is necessary to assess whether, under the combination of local ordinances and Pennsylvania law, Hlad in his capacity as the Code Enforcement Officer is a policy-maker in the relevant area of municipal business and whether that authority is final and unreviewable. *Id.* The Plaintiffs have also adequately "shown" by the allegations of the Complaint that Defendants Disso and Holmes were allegedly acting in combination with Hlad in relation to how he was allegedly impermissibly carrying out his duties. And, if it turns out that Hlad could be found to be such a final policy-maker, the actions of Disso and Holmes in such regards would tend to buttress the allegations of unconstitutional policy implementation by Hlad chargeable to Trafford. The claims against Trafford will therefore not be dismissed, at least not at this juncture.

Lastly, the Defendants move to dismiss Plaintiff Sanchez's claim of unconstitutional retaliation (Count III) based on qualified immunity. Sanchez asserts that he was punished by the Trafford Police by being cited for driving without a license, without any factual or legal basis, just because he was in a romantic relationship with Jennifer B. (ECF No. 1, ¶¶ 12, 20–24.) The Defendants say that such does not state a valid claim of a constitutional violation, but even if it did, the police officers here would not be subject to liability for money damages by virtue of the doctrine of qualified immunity.

Qualified immunity shields governmental actors from money damages liability unless they have violated a federal constitutional or statutory right, and when they did so, the unlawfulness of their conduct was clearly established or they were plainly incompetent. *Reichle v. Howards*, 566 U.S. 658, 664 (2012); *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). For that doctrine to apply, the Court must conclude either that the Complaint fails to set out a constitutional claim for money damages, or that even if it does, the rights alleged to have been violated were not "clearly established" at the time of the alleged violation. *Knight v. Bobanic*, 807 F. App'x 161, 163 (3d Cir. 2020); *see District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018). At the Motion to Dismiss stage, the Court is to accept the facts as pleaded by the Plaintiffs, and in the light most favorable to them. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

First, the First and Fourteenth Amendments protect the ability of any individual to closely associate with another person of their choosing, *Roberts v. United States Jaycees*, 468 U.S. 609, 617–18 (1984), including in a consensual romantic or intimate relationship, even one that is outside of marriage. *See Lawrence v. Texas*, 539 U.S. 558, 578 (2003); *see also Pi Lambda Phi Fraternity, Inc. v. Univ. of Pittsburgh*, 229 F.3d 435, 441 (3d Cir. 2007) (intimate relationship analysis under *Roberts* focuses on small size of the relationship, high degree of selectivity in

5

decisions to begin and end the relationship, and seclusion from others in critical aspects of the relationships); *Rode v. Dellarciprete*, 845 F.2d 1195, 1204–05 (3d Cir. 1988) (focus is on small, selective, secluded nature of the relationship); *Starnes v. Court of Common Pleas of Butler Cty.*, No. 17-1304, 2018 WL 3586835, at *4–5, *9–10 (W.D. Pa. July 26, 2018) (collecting a consensus of cases in denying application of qualified immunity relative to an intimate relation claim).

It would appear to the Court that for quite some time now, the right to associate with others, and in particular to associate for purposes of what could be fairly described as a consensual intimate or "romantic" relationship, has been clearly established such that every law enforcement officer would know that. *Lawrence,* decided in 2003, would seem to plainly and "clearly" stand for the proposition that criminal sanctions cannot be exacted against a person because they engage in such a relationship, particularly the most intimate of relationships. *See Christensen v. Cnty. of Boone, IL,* 483 F.3d 454, 463 (7th Cir. 2007) (citing *Lawrence*) (intimate relationship between non-married consenting adults is form of intimate association protected by the Constitution); *Anderson v. City of LaVergne*, 371 F.3d 879, 881–82 (6th Cir. 2004) (same).[1]

---

[1] To the extent the Defendants would question how "romantic" or intimate any relationship between Jennifer B. and Sanchez actually was, they face a significant hurdle at this juncture, since at this stage of the case, the Court is obligated to take the facts as pleaded by the Plaintiff in considering the motion to dismiss and considering the application of qualified immunity. *See Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014). That is why the denial of the motion to dismiss (including as to qualified immunity) is without prejudice to the reassertion of those arguments if later-developed facts so warrant.

In addition, the Court concludes that the Defendants' principal reliance, (ECF No. 10, at 11–12), on *Emick v. Borough of Montoursville*, No. 4:16-cv-1856, 2017 WL 2436032 at *4 (M.D. Pa. May 12, 2017), *report and recommendation adopted by* 2017 WL 2424059 (M.D. Pa. June 5, 2017), for the principle that the Constitution does not recognize a protected associational relationship with a romantic or intimate partner is misplaced. In that "natural rights" litigation filed *pro se,* the Court declined to adopt the plaintiff's assertion of violation of a constitutionally-protected association with an inebriated passenger in the front seat of his car, or a compelled association with the police officer conducting the involved drunk driving traffic stop (who apparently declined to accept the plaintiff's driver's license issued by the "Kingdom of Heaven"). The Court is unable to draw any parallels whatsoever between the situation in *Emick* and the allegations pleaded here.

And there is no fact-driven nuance to that right as it is asserted in the context of this case. *See Harper v. Cnty. of Delaware*, 779 F. App'x 143, 146 (3d Cir. 2019) (right of association claim requires Supreme Court or Circuit caselaw announcement to avoid qualified immunity). Here, unlike for instance an excessive force claim that is factually nuanced and circumstance specific, *see White v. Pauly*, 137 S. Ct. 548, 551–52 (2017), the allegations here are straightforward and direct—the police allegedly cited Sanchez for a violation of the law *because of* his romantic relationship with Jennifer B. The question is whether, on the date of the alleged violation as to Sanchez, that right—that is the right to not be sanctioned by force of law for the fact of a romantic or intimate relationship with another consenting adult—had been clearly established such that every reasonable police officer would have understood that what he was doing (as alleged by Sanchez here) violated that right. The Court concludes that it was.

First, that construct follows the contours of the underlying issue addressed and resolved in *Lawrence,* namely the imposition of a criminal sanction by a state actor for certain private activities within the ambit of an intimate relationship between two consenting unmarried adults.[2]

Second, as noted above, the Defendants acknowledge that it is well-settled that government officials cannot subject a person to adverse governmental actions because the person

---

[2] In *Lawrence,* that right was considered in the context of the Due Process Clause of the Fourteenth Amendment, and here it is advanced in the context of the First Amendment's protection of association between two consenting unmarried adults, and particularly as to intimate non-marital associations. But for these purposes, Circuit precedent would indicate that any such distinction as to the source of the right is not of consequence to this analysis. As our Court of Appeals has held, while the right must be framed in light of the specific factual context of the case and not as a broad general proposition, it need not be the case that the precise conduct at issue had been held unlawful in a prior case if the contours of the right are sufficiently clear, since public officials may be placed on notice that their actions violate settled law even if the circumstances are novel. *Kane v. Barger*, 902 F.3d 185, 194–95 (3d Cir. 2018).

In *Kane,* in which the right allegedly violated was the "right to bodily integrity," our Court of Appeals relied on one of its prior decisions involving instead a plaintiff's "right to privacy," when the conduct in the prior case and in the case then at hand was similar. *Id* at 195–96. The core conduct at issue—a governmental sanction exacted because of such a relationship itself—is "sufficiently factually similar," and the "right" at issue had been sufficiently announced such that it applied at the time of the alleged violation with "obvious clarity," no matter the constitutional benchmark for that right, *e.g.* the First as opposed to the Fourteenth Amendment. *Id.* at 196, 196 n.60.

engages in conduct protected by the First Amendment. *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019); *Williams v. City of Allentown*, 804 F. App'x 164, 169 (3d Cir. 2020)[3]; *Baloga v. Pittston Area Sch. Dist.*, 927 F. 3d 742, 752 (3d Cir. 2019). These are not new or "murky" principles of law, but ones coming from clear and direct announcements in Supreme Court and Courts of Appeals cases. *See Harper*, 779 F. App'x at 146; *Starnes*, 2018 WL 3586835 at *9–10.

Here, the Complaint expressly pleads that Defendant Holmes charged Sanchez with a motor vehicle code violation, without probable cause, in order to retaliate against Sanchez for Sanchez's "romantic" association with Jennifer B., an association facially protected by the First and Fourteenth Amendments. The Complaint therefore appears to squarely fit the pleading bill laid out in *Nieves*—Constitutionally protected conduct (the romantic relationship), retaliatory action (the motor vehicle code charges), the lack of probable cause to support those charges, and the direct causal relationship between the fact of the relationship and the charges. So, the Complaint "shows" a claim for relief under the applicable law.

The Court also concludes that the above referenced Supreme Court and Circuit court decisions plainly and unequivocally identify the protected rights and the allegedly unconstitutional conduct in the context of the violations pleaded here with sufficient precision to defeat a claim of qualified immunity. Based on those cases, the Court concludes that every police officer, perhaps even the "plainly incompetent," *Malley v. Briggs*, 475 U.S. 335, 341 (1986), would have known that he could not bring an adverse criminal or otherwise punitive charge against an adult based on the fact of that adult having an otherwise lawful consensual romantic or intimate relationship with another adult. *al-Kidd,* 563 U.S. at 741 (discussing the "clearly established" standard); *Zaloga v. Borough of Moosic*, 841 F.3d 170, 175 (3d Cir. 2016) (same

---

[3] The allegedly unconstitutional conduct here occurred in January, 2020. *Williams* was decided in March, 2020, so it would not be an "announced" case at the time of the alleged conduct, but *Nieves* would have been.

with respect to a First Amendment claim). The Court concludes that existing precedent from the Supreme Court would have placed that question beyond debate. *al-Kidd*, 563 U.S. at 741.

Given the clarity and applicability of the Supreme Court precedent noted above, and the direct nature of the Constitutional violation alleged by Sanchez in this case, this is a claim that matches the precedents. Here, like in *Lawrence*, the claim asserted is that the Plaintiff Sanchez was directly sanctioned because of the very existence of the protected relationship.[4] Therefore, the clearly established law is in fact "particularized to the facts of the case." *White*, 137 S. Ct. at 552. The Court concludes that such is a right that was sufficiently beyond dispute at the relevant time such that every police officer was on notice that he could not seek to impose a sanction on one adult because of that adult's otherwise lawful and consensual romantic or intimate relationship with another. *See Shultz v. Fayette County Court* of *Common Pleas*, No. 14-103, 2014 WL 5439794, at *2 (W.D. Pa. Oct. 22, 2014); *Gardner v. Barry,* No. 1:10-cv-0527, 2010 WL 4853885, at *5–6 (M.D. Pa. Nov. 23, 2010). The Court will therefore deny the application of qualified immunity without prejudice.

---

[4] Here's how the key facts in *Lawrence* line up with the circumstances pleaded here. In *Lawrence,* the police were dispatched to a private home (check) for reasons unrelated to the criminal charge ultimately brought (check). While there, they charged the resident's lover for criminal charges (check) wholly unrelated to the reason for the police dispatch (check), when there was an on-going intimate relationship between the consenting adult resident and the other consenting adult (check and check), and the charges brought were directly the result of the private relationship between the two consenting adults (check). The charges brought carried a very modest penalty (check), namely a fine of $200 plus costs, but a penalty nonetheless (check), *Lawrence*, 539 U.S at 575.

The Supreme Court held that the criminal sanctions brought in those circumstances, albeit "minor," were contrary to the rights secured by the Fourteenth Amendment, and therefore reversed the state court judgment upholding the convictions of the involved adults. *Id.* at 562–63, 578–79. That the two adults in Lawrence were of the same sex, and the two adults here of different sexes, would not appear to make any difference, *id* at 574, to defining the right announced by the Supreme Court in *Lawrence*: "The State cannot demean their existence or control their destiny by making their private sexual conduct a crime. Their right to liberty under the Due Process Clause gives them the full right to engage in their conduct *without intervention of the government*." *Id* at 578 (emphasis added). If the police officers here did charge Sanchez with an offense, minor as it may seem, because he was in a romantic relationship with Jennifer B., then that was an impermissible "intervention of the government" into that relationship. And in the Court's estimation, for these purposes, every reasonable police officer would be charged with having known that.

The Partial Motion to Dismiss at ECF No. 9 is DENIED without prejudice. The Plaintiff Sanchez's stand-alone claim for fabrication of evidence (Count II) is deemed withdrawn.

The Defendants shall file their Answers within twenty-one (21) days of the date of the accompanying Order. The Plaintiffs shall file a notice on the docket, under seal, setting out the full name of Plaintiff Jennifer B coupled with a motion for leave to proceed via use of the "Jennifer B." pseudonym, along with a proposed Order. The Plaintiffs shall file and serve the notice upon Defendants' counsel within ten (10) days of the date of the Order accompanying this Opinion.

An appropriate Order will issue.

    s/ Mark R. Hornak
Mark R. Hornak
Chief United States District Judge

Dated: August 18, 2020
cc: All counsel of record